[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This appeal comes to us from a judgment of conviction and imposition of sentence issued by the Huron County Court of Common Pleas on an aggravated burglary charge. Because we conclude that appellant was not prejudiced by the actions of the trial court nor deprived of effective assistance of counsel, we affirm.
Appellant, Garland Barnett, was initially charged with delinquency for allegedly violating R.C. 2911.11(A)(2), aggravated burglary, a felony if committed by an adult. The charges stemmed from appellant's alleged involvement in an early morning burglary and assault on members of the John Martin family who were asleep in their secluded rural home. At the time of the incident, appellant's age was nine days short of his eighteenth birthday.
After holding an investigative hearing, the Huron County Court of Common Pleas, Juvenile Division, transferred jurisdiction of appellant to the Huron County Court of Common Pleas for prosecution as an adult. Appellant was then indicted by the grand jury on the following seven counts: Count I — aggravated burglary, in violation of 2911.11(A)(1) and/or (2); Count II — robbery, in violation of R.C. 2911.02(A)(1) and/or (2); Count III — felonious assault, in violation of R.C. 2903.11(A)(2); Count IV — complicity to commit aggravated burglary, in violation of R.C. 2923.03(A)(2) and "2929.11(A)(1) and/or (2)"[1]; Count V — complicity to commit aggravated robbery in violation of R.C. 2923.03(2) and2911.01(A)(1); Count VI — complicity to commit kidnaping in violation of R.C. 2923.03(A)(2) and 2905.01(A)(2) and/or (3); and count VI — conspiracy in violation of R.C. 2923.01(A)(1).
On April 29 and 30, 1997, a bench trial was held. Several sheriff's patrol officers and members of the Martin family testified concerning the events related to the burglary and assault. It is undisputed that on the evening of December 23, 1996, appellant, Kevin Laser (who was twenty-two years old), and another young man were out together, as they had been seen together late that night at one of the area bars where they had been playing pool. Appellant and Laser had been drinking alcoholic beverages. The bar owner asked them to leave when she noticed that they had broken some of the pool sticks. The young men then left the bar and went riding around. When Laser decided to break into a home to rob someone, appellant allegedly said that he did not want to participate. Nevertheless, appellant continued riding around with Laser and the other young man.
At approximately 1:00 a.m., Laser targeted the Martin family's home. Appellant again tried to dissuade him from carrying out his plan. However, Laser said he would continue with or without appellant's help. Appellant waited outside in the Martin driveway, while the third young man (the driver) waited in the car which was parked on the road — approximately six hundred feet from the house.
Laser entered the home through an unlocked garage door, wandered through the house, and eventually made his way upstairs to the Martin parents' bedroom. There, he woke John Martin, the father, and, holding a knife to his throat, demanded money. Laser told John that if he did not cooperate, Laser would kill his wife and children. Without permitting John to put on any clothing, Laser led Martin onto the landing of the upstairs hallway. At this point, John began to struggle with Laser and attempted to take away the knife.
Meanwhile, John's wife called 9-1-1 seeking emergency assistance. John's fifteen-year-old son, who had also awakened, entered the hallway and grabbed Laser around the neck in a "choke hold." The youngest son, at his father's instruction, got a baseball bat and attempted to hit Laser. As soon as she knew sheriff's deputies were on the way, Mrs. Martin also attempted to help her husband. She took the bat from her son and struck Laser several times on the arm, causing him to drop the knife. John then picked up the knife while the fifteen-year old continued to restrain Laser.
At some point during this altercation, appellant, who was still waiting outside, became anxious that Laser had not returned. Appellant entered the Martin residence through the garage door, yelling "Hey" as he came into the downstairs hallway. Thinking that the law enforcement officers had arrived, the Martins called for him to come upstairs. Appellant ran up the stairs only to be met by the Martins' surprised and frightened responses.
Appellant said, "Excuse me, I'm here to help." However, when he allegedly moved one of his hands behind his back, John immediately reacted defensively. He leaped forward, grabbed appellant, and bent him backwards over the stair railing. At the same moment, a large closed pocket knife fell to the floor. Upon seeing this, John told his youngest son to bring him his shotgun. Appellant did not resist or struggle, but cooperated as John held him at gunpoint until the sheriff's deputies arrived shortly thereafter.
When the deputies took custody of the men, appellant continued to cooperate. Laser, however, had to be dragged to the patrol car, where he tried to kick and spit on the deputies. His feet were then also restrained using his own belt. During the ride to the booking office, Laser continued to scream, spit, and swear at the deputy. Although appellant became agitated at one point, for the most part he remained quiet and cooperative.
Appellant testified that while he had entered the home, he had only meant to try to get Laser out of the house. He stated that when he came up the stairs, his intent was to help the Martins, not to hurt anyone. Appellant said he just wanted to explain that Laser was drunk and was just in the wrong house. Appellant denied that he had attempted to pull out his knife. He testified that his pants had a hole in the pocket which caused the knife to fall out when John grabbed and shoved him. Although appellant denied that he had participated in Laser's robbery plan, he acknowledged that he made no attempt to warn the Martins or to leave Laser's company.
The trial court found appellant guilty of Counts I, IV and V: aggravated burglary, complicity to commit aggravated burglary, and complicity to commit aggravated robbery. The trial court then determined that these three offenses were allied offenses of similar import and, as a result, sentenced appellant to a term of eight years only as to aggravated burglary.
Appellant now appeals that conviction and sentence, setting forth the following six assignments of error:
 "I. THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY OF VIOLATIONS OF O.R.C. §§ 2923.03(A)(2) AND 2929.11(A)(1) AND/OR (2).
 "II. THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY OF A VIOLATION OF O.R.C. § 2911.11(A)(1) AND/OR (2).
 "III. THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY OF VIOLATIONS OF O.R.C. §§ 2923.03(A)(2) AND 2929.11(A)(1). THE CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE.
 "IV. THE ORIGINAL COURT BELOW ERRED IN TRANSFERRING JURISDICTION OF THIS MATTER TO THE COMMON PLEAS COURT, GENERAL DIVISION.
 "V. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE HEARING TO DETERMINE TRANSFER OF JURISDICTION TO THE GENERAL DIVISION OF THE HURON COUNTY COMMON PLEAS COURT.
 "VI. THE TRIAL COURT ERRED IN INFORMING THE APPELLANT HE IS ELIGIBLE FOR JUDICIAL RELEASE AFTER A PERIOD OF TIME NOT SOONER THAT 180 DAYS AFTER NOT ORDERING A PRESENTENCE INVESTIGATION."
 I.
Appellant, in his first assignment of error, argues that the trial court erred in finding him guilty of Count IV, complicity to commit aggravated burglary. Appellant contends that because Count IV mistakenly refers to "R.C.2929.11(A)(1) and/or (2)," which does not describe a crime, the trial court could not find appellant guilty of that count.
As we previously stated, the trial court initially found appellant guilty of three crimes: Count I — aggravated burglary (R.C. 2911.11), Count IV — complicity to commit aggravated burglary (listed as 2929.11(A)(1) and/or (2)), and Count V complicity to commit aggravated robbery. However, the trial court found all three crimes to be allied offenses of similar import. Upon the prosecution's election, the court imposed sentence only as to the aggravated burglary charge. Therefore, despite any typographical error in Count IV, such error was harmless and not prejudicial to appellant since he was not sentenced as to that count.
Accordingly, appellant's first assignment of error is not well-taken.
 II.
Appellant, in his second assignment of error, asserts that the trial court erred in finding him guilty of aggravated burglary in violation of R.C. 2911.11(A)(1) and/or (2). Appellant argues that the trial court had to find him guilty of a specific section of the statute, rather than in the alternative.
R.C. 2911.11 states, in pertinent part, that:
 "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
In this case, evidence was presented that appellant entered an occupied structure, by stealth, when other people were present, and was carrying a knife. It can be inferred that he intended to aid Kevin Laser in his felonious activity. Consequently, at the very least, the evidence supports a guilty verdict against appellant under R.C. 2911.11(A)(2). Moreover, regardless of how the offense was committed, it is the same offense and the penalty does not differ depending on which subsection applies. Therefore, we cannot say that the trial court's failure to specifically choose one section was prejudicial to appellant.
Accordingly, appellant's second assignment of error is not well-taken.
 III.
Appellant, in his third assignment of error, argues that the convictions for R.C. 2923.03(A)(2) and R.C. 2929.11(A)(1) were based upon insufficient evidence.
As we noted previously, the trial court ultimately convicted and sentenced appellant only under R.C. 2911.11. Appellant was never sentenced for the other two counts, despite the initial guilty verdicts under R.C. 2923.03(A)(2) and R.C.2929.11(A)(1). Therefore, we conclude that appellant's arguments are without merit.
Accordingly, appellant's third assignment of error is not well-taken.
 IV.
Appellant, in his fourth assignment of error, contends that the juvenile court erred in transferring jurisdiction of appellant's case to the common pleas court, to prosecute him as an adult.
Under Ohio statutory law, a juvenile court may relinquish jurisdiction over any juvenile fourteen years or older and transfer that juvenile to the Court of Common Pleas for prosecution as an adult. R.C. 2151.26; Juv.R. 30. A juvenile court has wide latitude and discretion in determining whether to waive jurisdiction in such cases. State v. Watson (1989), 47 Ohio St.3d 93,95. Therefore, absent an abuse of its discretion, an appellate court will not reverse a decision of a juvenile court to transfer a juvenile to the Court of Common Pleas for prosecution as an adult. Id.; State v. Douglas (1985), 20 Ohio St.3d 34, 36.
At the time of appellant's transfer proceedings, R.C.2151.26 provided in pertinent part that:
 "(C)(1) * * * after a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, the court at a hearing may transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense, after considering the factors specified in division (C)(2) of this section and after making all of the following determinations:
 "(a) The child was fourteen years of age or older at the time of the act charged.
 "(b) There is probable cause to believe that the child committed the act charged.
 "(c) After an investigation, including a mental examination of the child made by a public or private agency or a person qualified to make the examination, and after consideration of all relevant information and factors, including any factor required to be considered under division (C)(2) of this section, that there are reasonable grounds to believe that both of the following criteria are satisfied:
 "(I) The child is not amenable to care or rehabilitation or further care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children.
 "(ii) The safety of the community may require that the child be placed under legal restraint, including, if necessary, for the period extending beyond the child's majority."
The juvenile court must consider the following factors of R.C.2151.26(C)(2) which operate in favor of transfer:
 "(a) A victim of the act charged was five years of age or younger, regardless of whether the child who is alleged to have committed that act knew the age of that victim;
 "(b) A victim of the act charged sustained physical harm to the victim's person during the commission of or otherwise as a result of the act charged.
 "(c) The act charged is not a violation of 2923.12 of the Revised Code, and the child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.
 "(d) The child has a history indicating failure to be rehabilitated following one or more commitments pursuant to division (A)(3), (4), (5), (6), or (7) of section 2151.355 of the Revised Code.
 "(e) A victim of the act charged was sixty-five years of age or older or permanently and totally disabled at the time of the commission of the act charged, regardless of whether the child who is alleged to have committed the act knew the age of that victim."
Juv.R. 30 also provides for the transfer of juveniles to the court of common pleas. The determination that a juvenile would not be amenable to rehabilitation must be made upon the totality of the evidence. State v. Campbell (1991), 74 Ohio App.3d 352, 356, citing State v. Watson (1989), 47 Ohio St.3d 93. At the time of appellant's transfer hearing, Juv.R. 30(F) required the juvenile court to consider the following factors in determining a juvenile's amenability to rehabilitation for purposes of transfer:
"(1) The child's age and his mental and physical health;
"(2) The child's prior juvenile record;
 "(3) Efforts previously made to treat or rehabilitate the child;
"(4) The child's family environment;
"(5) The child's school record;
 "(6) The specific facts relating to the offense for which probable cause was found, to the extent relevant to the child's physical or mental condition."
In this case, appellant was over the age of fourteen and the juvenile court complaint alleged that he was delinquent for committing two or more acts which would be offenses if committed by an adult. Therefore, the juvenile court properly commenced its investigation pursuant to the bind over procedures of R.C.2151.26.
At the transfer hearing, the juvenile court received evidence and heard testimony from two witnesses: a psychologist and appellant's probation officer. The parties stipulated that appellant was in good physical health. Based upon his history and the results of personality and IQ tests, appellant was diagnosed as exhibiting a "disruptive behavior disorder." Appellant was described as being "fairly limited intellectually" with not very high abstract thinking. Appellant could distinguish between right and wrong and make appropriate social choices. However, appellant's history of delinquency, acting out in school, and physical aggression toward others indicated that he had difficulty coping with everyday life and family problems.
Appellant had experienced behavior problems in school and failed to succeed even though he had been placed in educational units with programs specifically tailored to his needs. Pursuant to a previous delinquency adjudication in 1993, he was placed for approximately one year at St. Anthony's Villa, an in-patient juvenile treatment facility and school. Although appellant completed his program there, he was not entirely successful in it. At various other times, appellant had been offered alternative educational opportunities, but failed to pursue them. Appellant dropped out of school approximately one year before the hearing. Other than working for only a month or two at a fast food restaurant, appellant had shown no efforts to try to support himself.
His history in the juvenile court system dated back to 1992 and involved five adjudications which included unruliness, assault, violation of probation, and liquor law violations. Family discipline had been inadequate and ineffective. Appellant also had a lengthy history of regular marijuana and alcohol use for which he underwent two weeks of inpatient hospital treatment in 1995. However, his drug test administered approximately one week before the Martin incident showed highly positive for marijuana usage. Additionally, appellant refused to attend substance abuse counseling as directed by his probation officer. Despite his history of behavior problems, he had never been committed to the Department of Youth Services.
On the positive side, appellant usually kept his probation appointments. Appellant also asked his probation officer for help with problems he was having with his stepmother. Appellant tried to listen and appeared sincere in wanting to follow through with the advice offered, and ultimately appellant reported that these problems with his stepmother had been alleviated. Appellant's father and stepmother confirmed this with the probation officer. The probation officer also acknowledged that Kevin Laser would have had a bad influence on appellant.
Based upon our review of the record, we conclude that information and evidence was presented and considered by the trial court as to the factors included under R.C. 2151.26 and Juv.R. 30. We further conclude that the juvenile court did not abuse its discretion in determining that appellant was not amenable to further rehabilitation in a facility designed for delinquent children and that community safety might require his legal confinement beyond his age of majority. Therefore, the court did not abuse its discretion in transferring jurisdiction to the common pleas court.
Accordingly, appellant's fourth assignment of error is not well-taken.
 V.
Appellant, in his fifth assignment of error, argues that he was denied effective assistance of counsel at the juvenile court transfer hearing.
In order to prove ineffective assistance of counsel, a defendant must show 1) that defense counsel's representation fell below an objective standard of reasonableness and 2) that counsel's deficient representation was prejudicial to defendant's case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, Strickland v. Washington (1984),466 U.S. 668, 694.
In the present case, appellant's counsel did initially misunderstand the requirements of R.C. 2151.26. However, after a brief discussion with the court and the prosecutor, he realized his mistake and responded appropriately.
Although appellant challenges his counsel's failure to present additional witnesses, we cannot say that the record was totally void of favorable evidence in appellant's defense. Appellant's counsel elicited testimony from both the psychologist and probation officer which illustrated positive factors for the court to consider in making its determination to relinquish jurisdiction. Furthermore, due to appellant's previous involvement with the juvenile system, much information was available to the juvenile court through appellant's own actions and the various psychological and school reports. Despite counsel's failure to call additional witnesses, appellant has not demonstrated that such testimony would have outweighed the abundant evidence presented which weighed in favor of transfer. Upon a complete review of the proceedings, we conclude that appellant's rights were adequately protected throughout the transfer proceedings. Therefore, appellant has failed to establish that his counsel's performance fell below the accepted standard or that he was prejudiced by such performance.
Accordingly, appellant's fifth assignment of error is not well-taken.
 VI.
Appellant, in his sixth assignment of error, asserts that the trial court erred in informing him that he would be eligible for judicial release after one hundred eighty days. Appellant also argues that he will be prevented from being eligible for judicial release because the trial court did not order a presentence investigation pursuant to Crim.R. 32.2.
As appellant correctly notes, R.C. 2929.20(B)(3), which provides for the application for judicial release, states:
 "(3) If the stated prison term is five years or more and less than ten years, the eligible offender shall file the motion after the eligible offender has served five years of the stated prison term."
However, contrary to appellant's assertion, Crim.R. 32.2 applies only to probation granted by the trial court as an initial sentence. A trial court need not order a presentence report in a felony case when probation is not granted. State v. Cyrus (1992),63 Ohio St.3d 164, syllabus.
In this case, since appellant's sentence was for eight years, he will be eligible to apply for judicial release after serving five years. While it is true that the trial court misstated the time period when appellant will be eligible to apply for judicial release, this statement was made after appellant was found guilty pursuant to a full trial on the merits of his case. Since appellant's conviction in no way depended upon this statement, he has failed to establish that the misstatement prejudiced him or otherwise affected the outcome of his case. Therefore, even though the trial court erred in its comments as to appellant's eligibility for judicial release, such error was harmless.
Accordingly, appellant's sixth assignment of error is not well-taken.
The judgment of the Huron County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _________________________________ Peter M. Handwork, P.J.
JUDGE
 _______________________________ Melvin L. Resnick, J.
JUDGE
 _____________________________ James R. Sherck, J.
JUDGE
CONCUR.
[1] As appellant correctly points out, R.C. 2929.11
addresses penalties for felonies and is, thus, not an offense with which appellant could be charged. However, as we later note, this typographical error does not affect appellant's final conviction and sentence.